## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH ROBERTSON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| | |
| **VERSUS** | **NO. 15-874** |
| | |
| **CHEVRON USA, INC., ET AL.,** | **SECTION: "E" (3)** |
| **Defendant** | |

## <u>ORDER AND REASONS</u>

Before the Court are thirteen motions to dismiss filed by Defendants: (1) ConocoPhillips Company ("Conoco");[1] (2) Shell Oil Company, Shell Offshore Inc., and SWEPI LP ("Shell");[2] (3) Joseph Grefer and Camille Grefer ("Grefer Defendants");[3] (4) Marathon Oil Company ("Marathon");[4] (5) BP Products North America, Inc., as successor to Amoco Oil Company and BP Exploration & Oil Inc., and BP America Production Company ("BP");[5] (6) Texaco Inc. ("Texaco");[6] (7) Chevron U.S.A. Inc. ("Chevron");[7] (8) Anadarko US Offshore, LLC ("Anadarko");[8] (9) L.B. Foster Company ("L.B. Foster");[9] (10) OFS, Inc. ("OFS");[10] (11) Alpha Technical Services, Inc. ("Alpha Tech");[11] (12) Riverstone Insurance (UK) Limited, as successor in interest to certain businesses of Sphere Drake Insurance Limited ("Riverstone");[12] and (13) Certain Underwriters at

---

[1] R. Doc. 63.
[2] R. Doc. 67.
[3] R. Doc. 69.
[4] R. Doc. 113.
[5] R. Doc. 114.
[6] R. Doc. 116.
[7] R. Doc. 117.
[8] R. Doc. 118.
[9] R. Doc. 128.
[10] R. Doc. 141.
[11] R. Doc. 145. Marathon, BP, Texaco, Chevron, L.B. Foster, OFS, and Alpha Tech adopt *in extenso* the factual and legal allegations set forth in the Rule 12(b)(6) motion to dismiss and supporting memorandum filed by Conoco. R. Docs. 63, 63-1.
[12] R. Doc. 158. Plaintiffs allege Sphere Drake is the insurer of Pipe Contractor Defendant Oilfield Testers, Inc. Riverstone adopts *in extenso* the factual and legal allegations set forth in the Rule 12(b)(6) motion to dismiss and supporting memorandum filed by Anadarko. R. Docs. 118, 118-1.

Lloyd's, London ("Lloyd's").[13] The motions are opposed.[14] For the reasons that follow, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege personal injuries and property damage from their alleged exposure to naturally occurring radioactive material ("NORM") from scale that was removed from used oil field pipe as part of oil and gas operations that occurred in Harvey, Louisiana.[15] The plaintiffs include persons and representatives of persons who formerly and/or presently live in, work in, or own property in Harvey, Louisiana.[16] The defendants include several oil companies ("Oil Company Defendants"), businesses that conducted pipe-cleaning operations for the oil companies ("Pipe Contractor Defendants"),[17] and the owners of the property on which the pipe-cleaning operations were conducted ("Landowners").[18]

Plaintiffs allege the Oil Companies delivered pipe that was covered in pipe scale to the Pipe Contractors.[19] The pipe scale, which collects on the inside of oil field drill pipes, was contaminated with NORM.[20] According to Plaintiffs, the pipe-cleaning operations "created large quantities of radioactive dust, debris, and other residue" that "became

---

[13] R. Doc. 159. Plaintiffs allege Lloyd's is the insurer of Pipe Contractor Defendant Oilfield Testers, Inc. Lloyd's adopts *in extenso* the factual and legal allegations set forth in the Rule 12(b)(6) motion to dismiss and supporting memorandum filed by Anadarko. R. Docs. 118, 118-1.

[14] R. Doc. 106 (opposition to Conoco's motion to dismiss); R. Doc. 107 (opposition to the Grefer Defendants' motion to dismiss); R. Doc. 108 (opposition to Shell's motion to dismiss); R. Doc. 132 (opposition to Marathon's motion to dismiss); R. Doc. 133 (opposition to BP's motion to dismiss); R. Doc. 134 (opposition to Texaco's motion to dismiss); R. Doc. 135 (opposition to Chevron's motion to dismiss); R. Doc. 139 (opposition to Anadarko's motion to dismiss); R. Doc. 140 (opposition to L.B. Foster's motion to dismiss).

[15] R. Doc. 1-1 at ¶¶ 7, 14, 15. The Petition refers to "NORM" as "Technologically Enhanced Radioactive Materials" ("TERM").

[16] *Id.* at ¶ 5.

[17] Only two Pipe Contractor Defendants—OFS and Alpha Tech—have filed motions to dismiss. R. Docs. 141, 145. Riverstone and Lloyd's, insurers of Pipe Contractor Defendant Oilfield Testers, Inc., also filed motions to dismiss. R. Docs. 158, 159.

[18] *Id.* at ¶¶ 7, 10, 15.

[19] *Id.* at ¶ 12.

[20] *Id.* at ¶¶ 13–14.

airborne and either drifted off the Property or was wind-blown off the Property into the Petitioners' neighborhood and onto their properties."[21] Plaintiffs further allege some residue settled onto the ground and was washed off by surface water runoff onto their properties.[22]

Joseph Robertson and 157 other plaintiffs filed suit in Civil District Court for the Parish of Orleans on February 5, 2015; 33 additional plaintiffs were named in a supplemental petition.[23] Defendant Joseph Grefer removed the action to this Court.[24]

Plaintiffs filed a motion for remand, which this Court granted on September 2, 2015, because the Court found Defendants failed to establish the individual amount in controversy as required under 28 U.S.C. § 1332(a) and (d)(11)(B)(i).[25] On January 22, 2016, the Fifth Circuit reversed this Court's finding that no plaintiff had satisfied the individual amount-in-controversy requirement, and remanded the case to this Court to address Plaintiffs' remaining jurisdictional arguments.[26]

On July 11, 2016, this Court denied Plaintiffs' motion to remand, finding the Defendants established minimal diversity for purposes of removal under CAFA and the injuries alleged by Plaintiffs meet the aggregate amount in controversy requirement of $5 million under CAFA.[27] The Court ordered Plaintiffs to identify any claims of individual plaintiffs that should be remanded because the plaintiff failed to meet the individual amount-in-controversy requirement. After allowing multiple extensions of time to submit

---

[21] *Id.* at ¶ 15.
[22] *Id.*
[23] *See* R. Doc. 1-1.
[24] R. Doc. 1.
[25] R. Doc. 41.
[26] *See* R. Doc. 52.
[27] R. Doc. 53.

sufficient evidence to establish the amount in controversy for any individual plaintiff, the Court ordered no individual plaintiff's claims were to be remanded to state court.[28]

Multiple Defendants then filed motions to dismiss under Rule 12(b)(6), arguing Plaintiffs failed to state a plausible claim for various causes of action.

## STANDARD OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[29] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] However, the court does not accept as true legal conclusions or mere conclusory statements,[32] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[33] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[34]

---

[28] R. Doc. 100. Plaintiffs appealed this Court's decision not to remand any individual plaintiff's claim to state court. The Fifth Circuit denied Plaintiffs' motion to appeal. R. Doc. 109.

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[31] *Id.*

[32] *Id.*

[33] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[34] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[35] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[36] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[37]

## LAW AND ANALYSIS

The Defendants' motions to dismiss are similar. Defendants seek the dismissal of Plaintiffs' claims with prejudice, arguing that Plaintiffs have failed to state claims for relief that are plausible on their face. The Plaintiffs' petition consists of numerous causes of action. The Court considers the Defendants' motions to dismiss by analyzing them in the context of each cause of action, in turn.

### I.    Depositor/Depositary Liability

Plaintiffs allege "the Pipe Contractors were the compensated depositaries and agents of the Oil Companies."[38] "A deposit is a contract by which a person, the depositor, delivers a movable thing to another person, the depositary, for safekeeping under the obligation of returning it to the depositor upon demand."[39] "The depositor is bound to reimburse the depositary for the reasonable expenses he has incurred for the safekeeping of the thing deposited, to indemnify him for the losses the thing may have caused him, and to pay him the agreed remuneration."[40]

---

[35] *Twombly*, 550 U.S. at 555.
[36] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[37] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).
[38] *Id.* at ¶ 11.
[39] LA. CIV. CODE art. 2926.
[40] LA. CIV. CODE art. 2940.

Defendants[41] seek dismissal of Plaintiffs' claims against the Oil Company Defendants and Pipe Contractor Defendants under Louisiana Civil Code articles 2926 for depositor/depositary liability.[42]

Plaintiffs have not alleged they are in a "depositor/depositary relationship with the Defendants," but instead argue "merely that the Pipe Contractors were in such a relationship with the Oil Companies."[43] Even assuming a depositor/depositary relationship existed between the Oil Company Defendants and the Pipe Contractor Defendants, the Court finds the Oil Company Defendants, as alleged depositors, cannot be held liable to third parties, such as the Plaintiffs.[44] Any cause of action under the Louisiana Civil Code articles on deposit belongs only to the depositary.[45]

**IT IS ORDERED** that Defendants' motions to dismiss for failure to state a claim[46] with respect to Plaintiffs' claims for depositor/depositary liability are **GRANTED**. Plaintiffs' claims against Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, OFS, Alpha Tech, Riverstone, and Lloyd's are **DISMISSED WITH PREJUDICE**.

## II.   <u>Continuous Tort</u>

All Defendants[47] seek to dismiss what they call Plaintiffs' "continuous tort claims." Plaintiffs allege "[p]ortions of the contaminated pipe-cleaning residue are believed to remain on the Property, where it continues to emit radiation to contaminate the ground

---

[41] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, OFS, Alpha Tech, and Riverstone.
[42] R. Doc. 1-1 at 7, ¶¶ 10–12.
[43] R. Doc. 106 at 4.
[44] *See* LA. CIV. CODE arts. 2926, 2940.
[45] *See* LA. CIV. CODE art. 2940.
[46] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko), R. Doc. 128 (L.B. Foster), R. Doc. 141 (OFS), R. Doc. 145 (Alpha Tech), R. Doc. 158 (Riverstone), R. Doc. 159 (Lloyd's).
[47] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, Grefer Defendants, OFS, Alpha Tech, Riverstone and Lloyd's.

water and surface water that flows from the Property into the Petitioner's neighborhood and onto their properties."[48] Plaintiffs also allege "during all times relevant, radiation escaped from the Property and has been [] discovered . . . , thus representing a continuous tort."[49]

In reality, the continuing tort doctrine is not a cause of action and no such cause of action is asserted in the petition. Instead, the allegation relates to whether a continuing tort suspends prescription with respect to certain causes of action. The Defendants have not moved for dismissal based on prescription of any claims.

**IT IS ORDERED** that Defendants' motions to dismiss for failure to state a claim[50] with respect to Plaintiffs' claims for continuous tort are **DENIED**. The Court will address any issues of prescription and the continuing nature of torts if motions to dismiss based on prescription are filed.

III.    **Strict Liability Under Louisiana Civil Code Articles 2317 and 2317.1**

The Oil Company Defendants[51] and the Pipe Contractor Defendants[52] seek to dismiss Plaintiffs' claims under Louisiana Civil Code articles 2317 and 2317.1 for strict liability. Plaintiffs allege the Oil Company Defendants and Pipe Contractor Defendants "are strictly liable for having *garde* of the contaminated pipe," citing Louisiana Civil Code articles 2317 and 2317.1.[53]

---

[48] R. Doc. 1-1 at 8, ¶ 16.
[49] *Id.*
[50] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 69 (the Grefer Defendants), R. Doc. 118 (Anadarko), R. Doc. 128 (L.B. Foster), R. Doc. 141 (OFS), R. Doc. 145 (Alpha Tech), R. Doc. 158 (Riverstone), R. Doc. 159 (Lloyd's).
[51] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, and L.B. Foster.
[52] R. Docs. 141, 145, 158.
[53] R. Doc. 1-1 at ¶ 30(I); *id.* at ¶ 34(F).

Prior to April 16, 1996, a plaintiff could impose strict liability on a custodian of a thing under former Louisiana Civil Code article 2317 by establishing that (1) the person was injured by a thing that was in the defendant's care, custody, or control (*garde*); (2) the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) the vice, ruin, or defect was the cause-in-fact of plaintiff's damages.[54]

In 1996, Louisiana Civil Code article 2317.1 was added to require actual or constructive knowledge of an unreasonable risk of harm to impose liability on a custodian of a thing. Thus, after April 16, 1996, a plaintiff alleging strict liability based on the defendant being the owner or custodian of a thing must prove: "(1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care."[55]

Under either the pre-1996 or post-1996 causes of action for strict liability, a defendant is liable for only things in its custody that have a "ruin, vice, or defect."[56] The Oil Company Defendants and the Pipe Contractor Defendants argue the alleged scale is not an imperfection inherent in the pipe itself sufficient to trigger strict liability.[57] The Defendants contend they cannot be held strictly liable because the contaminated pipe scale on the oilfield pipes is merely a temporary condition and thus not a "defect" sufficient to trigger strict liability.[58]

The Court disagrees. The radiation at issue in this case is absorbed into the pipe, which Plaintiffs assert renders the pipe permanently defective. Thus, the radioactive

---

[54] *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 (La. 2001).
[55] *Gailey v. Barnett*, 106 So. 3d 625, 628 (La. Ct. App. 4 Cir. 2012).
[56] La. Civ. Code art. 2317.1.
[57] *See* R. Doc. 63-1 at 8; R. Doc. 67-1 at 8; R. Doc 118-1 at 12–13.
[58] *See* R. Doc. 63-1 at 8; R. Doc. 67-1 at 8; R. Doc 118-1 at 12–13.

quality of the pipes containing NORM is not a mere temporary hazard that would preclude the applicability of strict liability.

Defendants also argue Plaintiffs fail to allege the vice or defect in the pipes was the cause-in-fact of their injuries. Instead, Defendants argue, Plaintiffs allege their injuries were caused by pipe-cleaning operations conducted on the property.[59] Defendants contend Plaintiffs' claim of strict liability should be dismissed because it was the pipe-cleaning operations—not any inherent defect in the pipes—that caused their injuries.[60]

Plaintiffs' petition alleges the "scale on the pipe delivered to the Property was contaminated with . . . TERM, and other hazardous . . . compounds that are known to pose a serious health risk to humans."[61] Plaintiffs also allege the radioactive material "will remain in the properties of the Petitioners, and continue[] to emit harmful radiation, damaging Petitioner's [sic] properties and causing . . . health problems."[62] Plaintiffs further allege "[a]s a result of their long-term exposures . . . the Petitioners are at risk for contracting diseases, including cancers and forms of leukemia."[63] Finally, Plaintiffs allege the "acts and/or omissions of the [Defendants] are a substantial contributing cause of the Petitioners' injuries and damages."[64] The Court finds this sufficient to allege the pipe scale caused Plaintiffs' physical injuries and property damage.

Defendants further argue Plaintiffs failed to allege that any Oil Company Defendant had *garde* of the pipe when the alleged harm occurred. Conoco argues it

---

[59] *See* R. Doc. 1-1 at ¶¶ 13–16, 18.
[60] *See* R. Doc. 63-1 at 8; R. Doc 118-1 at 12–13.
[61] R. Doc. 1-1 at ¶ 14.
[62] *Id.* at ¶ 17.
[63] *Id.* at ¶ 19.
[64] *Id.* at ¶¶ 28, 32, 36.

cannot be held strictly liable because "several entities, including the Pipe Contractors, accepted the pipe and asserted custody and control ("garde") over it."[65]

In *Ross v. La Coste de Monterville*, the Louisiana Supreme Court, after a thorough analysis of the origin of Louisiana's law with respect to *garde* of a thing that causes harm, held that for the purposes of strict liability, "an owner of a thing who transfers its possession, but not its ownership to another, continues to have the *garde* of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer."[66]

In this case, Plaintiffs allege "the Oil Companies delivered to the Pipe Contractors at the Property used oil field pipe that was to be cleaned and inspected" and "[a]t all relevant times, the Oil Companies retained ownership of the pipe, and retained the right to supervise and control the Pipe Contractors' cleaning work."[67] Plaintiffs further allege the "scale on the pipe delivered [to the Pipe Contractor Defendants] . . . was contaminated with [TERM]."[68] Because Plaintiffs allege the Oil Company Defendants "retained ownership of the pipe" and the Pipe Contractor Defendants had care, custody, or control of the pipes, the Court finds the Plaintiffs allege sufficient facts to establish the Oil Company Defendants and Pipe Contractor Defendants had custody or control of the pipes for the purposes of strict liability. Accordingly, Plaintiffs adequately state a claim for strict liability under Louisiana Civil Code article 2317 as to claims arising before 1996.

With respect to Plaintiffs' claims under articles 2317 and 2317.1 for claims arising after 1996, Plaintiffs must prove "(1) that the defendant knew or should have known of

---

[65] R. Doc. 63-1 at 9.
[66] *Ross v. La Coste de Monterville*, 502 So. 2d 1026, 1032 (La. 1987).
[67] R. Doc. 1-1 at ¶ 10.
[68] *Id.* at ¶ 14.

the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care."[69] "[W]ith its adoption of [article] 2317.1 to require knowledge or constructive knowledge, 'the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim.'"[70]

Plaintiffs allege the Oil Company Defendants "knew or should have known" of the fault of the Pipe Contractor Defendants, that the Pipe Contractor Defendants were handling hazardous materials in a negligent manner, and that the Pipe Contractor Defendants were performing work under contracts with the Oil Company Defendants, which caused the Plaintiffs' injuries.[71] Plaintiffs further allege the Oil Company Defendants "did nothing to either stop the negligent operations or make them safe."[72] Plaintiffs, however, fail to allege whether the damage could have been prevented by the Oil Company Defendants' exercise of reasonable care.

With respect to the Pipe Contractor Defendants, Plaintiffs do not allege facts with respect to any of the three elements for liability under article 2317.1.

Plaintiffs must amend their complaint to sufficiently allege whether the damage caused by the pipe cleaning operations could have been prevented by the Oil Company Defendants' exercise of reasonable care. As to the Pipe Contractor Defendants, Plaintiffs must allege whether each Pipe Contractor Defendant knew or should have known of the vice or defect, whether the damage could have been prevented by that Pipe Contractor

---

[69] *Gailey*, 106 So. 3d at 628.

[70] *Burmaster v. Plaquemines Par. Gov't*, 982 So. 2d 795, 799 n.1 (La. 2008) (quoting *Lasyone*, 786 So. 2d at 689 n.9).

[71] R. Doc. 1-1 at ¶¶ 30(A)–(C).

[72] *Id.* at ¶ 30(A).

Defendant's exercise of reasonable care, and whether that Pipe Contractor Defendant failed to exercise such reasonable care.

**IT IS ORDERED** that Oil Company Defendants' and Pipe Contractor Defendants' motions to dismiss[73] are **DENIED** with respect to Plaintiffs' claims for strict liability under Louisiana Civil Code article 2317 for claims arising before 1996.

**IT IS FURTHER ORDERED** that the Plaintiffs amend their complaint by **March 13, 2017** to properly allege a cause of action for strict liability under articles 2317 and 2317.1 for causes of actions arising after 1996.

## IV.   <u>Absolute Liability for Ultra-hazardous Activities Under Article 667</u>

The Oil Company Defendants,[74] Grefer Defendants, and the Pipe Contractor Defendants[75] seek to dismiss Plaintiffs' claims under Louisiana Civil Code article 667. Plaintiffs allege the Oil Company Defendants and Pipe Contractor Defendants "are strictly liable for conducting operations on the Property that caused damages and injuries to Petitioners [under Louisiana Civil Code article] 667"[76] and the Grefer Defendants, as landowners, "are strictly liable for conducting activities on the Property that caused and is causing damage to the Petitions, who are their neighbors."[77]

The pre-1996 version of Louisiana Civil Code article 667 provided: "Although a proprietor may do with his estate what he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." Louisiana courts interpreted the pre-1996 article 667 to

---

[73] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster), R. Doc. 141 (OFS), R. Doc. 145 (Alpha Tech), R. Doc. 158 (Riverstone), R. Doc. 159 (Lloyd's).
[74] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster.
[75] OFS, Alpha Tech, Riverstone, and Lloyd's.
[76] R. Doc. 1-1 at ¶¶ 30(J), 26(A).
[77] *Id.* at ¶ 26(A).

impose liability without fault—known as absolute liability—for damage caused by an "ultra-hazardous" activity.[78]

In 1996, the legislature amended article 667 to require a showing of negligence, unless the claim was caused by "pile driving" or "blasting with explosives."[79] The current version of article 667 provides:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.[80]

A. <u>Plaintiffs' Claims for Damages Stemming from Violations of Article 667 Before 1996</u>

To establish liability for harm incurred as a result of violations of article 667 before 1996, a plaintiff must show the defendant is: "(1) a proprietor (2) who conducts "work" on his property (3) that causes damage to his neighbor."[81] The term "proprietor," although commonly interpreted to refer to landowners, "has been expansively interpreted by the courts to apply not only to a landowner, but also to a person whose rights derive from the

---

[78] *Bartlett v. Browning-Ferris, Indus., Chem. Servs. Inc.*, 683 So. 2d 1319, 1321 (La. Ct. App. 1996).
[79] *Yokum v. 615 Bourbon St., L.L.C.*, 977 So. 2d 859, 874 (La. 2008).
[80] La. Civ. Code art. 667.
[81] *Alford v. Anadarko E&P Onshore LLC*, Nos. 13-5457, 13-5703, 2015 WL 471596, at *9 (E.D. La. Feb. 4, 2015).

owner."[82] For the purposes of article 667, "work" includes "not only constructions but also activities that may cause damage."[83]

Anadarko argues Plaintiffs fail to allege that it or any other Oil Company Defendant is a proprietor because there is no allegation that any Oil Company Defendant owned the property or held any right derived from owners of the property.[84] In response, Plaintiffs argue the Oil Company Defendants were "proprietors" engaged in "work" on the property because they "furnished the pipe contractors with defective oil pipes which caused damage on the property."[85] The Court finds Plaintiffs have failed to allege the Oil Company Defendants are "proprietors" for the purpose of liability under article 667, because Plaintiffs have not alleged the Oil Company Defendants owned the property or derived rights from the landowners.

Accordingly, the Oil Company Defendants' motions to dismiss with respect to absolute liability under article 667 for conduct that occurred before 1996 are granted.

With respect to the Grefer Defendants, however, Plaintiffs have alleged the Grefer Defendants are landowners, and therefore proprietors.[86] The Plaintiffs also have alleged the Grefer Defendants conducted "work" on their property, by contracting with the Pipe Contractors to conduct pipe-cleaning operations on their property.

To make a claim under article 667, Plaintiffs also must allege the Grefer Defendants were engaged in ultra-hazardous activities. Louisiana courts have engaged in a three-step inquiry to determine whether an activity is ultra-hazardous: "(1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury,

---

[82] *Yokum*, 977 So. 2d at 874 (quoting *Inabnet v. Exxon Corp.*, 642 So. 2d 1243, 1251 (La. 1994)).
[83] *Id.*
[84] R. Doc. 118-1 at 16.
[85] R. Doc. 106.
[86] *See Yokum*, 977 So. 2d at 874.

and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury."[87] Plaintiffs are not required to allege the Grefer Defendants negligently engaged in ultra-hazardous activities for the purpose of pre-1996 liability under article 667.

In support of their motion to dismiss with respect to absolute liability under article 667, the Grefer Defendants and Pipe Contractor Defendants adopted the arguments of Conoco.[88] The Grefer Defendants and Pipe Contractor Defendants, by adopting Conoco's arguments, argue Plaintiffs' allegations fall short of satisfying these three criteria because Plaintiffs do not allege that the activity relates to land or another immovable because the damage in this case is the removal of NORM from the pipes.[89] The Grefer Defendants and Pipe Contractor Defendants also argue Plaintiffs fail to allege they were directly involved with the injury-producing activity—pipe cleaning.[90] Finally, the Grefer Defendants and Pipe Contractor Defendants contend Plaintiffs fail to allege facts to support the conclusion that pipe-cleaning operations cannot be performed safely, arguing "if an activity can be conducted without a high degree of risk by exercising due care, it is not ultra-hazardous."[91]

With respect to the Grefer Defendants, the Court finds Plaintiffs do not allege the Grefer Defendants directly engaged in the pipe-cleaning activities. The Plaintiffs allege only that the Grefer Defendants leased their property to the Pipe Contractors to conduct pipe-cleaning operations.[92] Accordingly, the Grefer Defendants' motion to dismiss with

---

[87] *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 683 So. 2d 1319, 1322 (La. Ct. App. 3 Cir. 1996), *writ denied sub nom. Bartlett v. Browning-Ferris Indus., Chem. Serv., Inc.*, 692 So. 2d 394 (La. 1997) (quoting *Triplette v. Exxon Corp.*, 554 So. 2d 1361, 1362 (La. Ct. App. 1 Cir. 1989)).
[88] R. Doc. 69-1 at 11; R. Doc. 141; R. Doc. 145.
[89] R. Doc. 63-1 at 11.
[90] *Id.*
[91] *Id.* at 12.
[92] R. Doc. 1-1 at ¶ 8.

respect to Plaintiffs' claims for absolute liability under article 667 for conduct that occurred before 1996 is granted.

With respect to the Pipe Contractor Defendants, the Plaintiffs allege "the pipe cleaning operations [were] conducted on and within the Property"[93] and the residue from the pipe-cleaning operations "settled onto the ground and was washed off the Property by surface water runoff onto the Petitioners' properties, or was absorbed into the ground and migrated off the Property onto Petitioners' properties."[94] The Court finds these allegations sufficient with respect to the pipe-cleaning operations relating to the land. Plaintiffs also allege the Pipe Contractor Defendants conducted the oil field pipe equipment cleaning operations,[95] which is sufficient to allege the Pipe Contractor Defendants "directly engaged" in the ultra-hazardous activities. With respect to the third criteria, however, Plaintiffs fail to allege that the pipe-cleaning do not require substandard conduct to cause injury. Plaintiffs must sufficiently allege facts to meet all three criteria to establish the defendants engaged in ultra-hazardous activities.

Accordingly, the Plaintiffs must amend their complaint with respect to their claims against the Pipe Contractor Defendants under article 667 for violations that occurred before 1996 to allege that the pipe-cleaning operations do not require substandard conduct to cause injury.

B. Plaintiffs' Claims for Damages Stemming from Violations of Article 667 After 1996

Because Plaintiffs do not claim any of the defendants engaged in pile driving or blasting with explosives, they do not have a claim against defendants for absolute liability

---

[93] *Id.* ¶ 9.
[94] *Id.* at ¶ 15.
[95] *Id.* at ¶ 8.

under for damages incurred as a result of violations of article 667 after 1996. To the extent Plaintiffs attempt to state a claim for absolute liability—liability without proof of negligence or fault—under post-1996 article 667, Defendants' motions to dismiss are granted.

To recover for damages as a result of post-1996 conduct, Plaintiffs must allege Defendants' actions were negligent.[96] To sustain a negligence claim under article 667 for damages as a result of conduct after 1996, a plaintiff must show the defendant "knew or, in the exercise of reasonable care, should have known that [the defendant's] works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that [the defendant] failed to exercise such reasonable care."[97] The Court finds the Plaintiffs have plausibly alleged the Oil Company Defendants, Grefer Defendants, and Pipe Contractor Defendants negligently conducted activities, causing harm to Plaintiffs and their properties. Accordingly, Plaintiffs' claims under article 667 for damages as a result of conduct after 1996 may proceed. Defendants' motions to dismiss with respect to liability under article 667 damages as a result of conduct after 1996 are denied.

## V.   **Res Ipsa Loquitur**

All Defendants seek to dismiss Plaintiffs' claims against them based on the doctrine of *res ipsa loquitur*. Plaintiffs allege "[i]n addition to the allegations of negligence and strict liability . . . . the Petitioners plead the doctrine of *res ipsa loquitur*."[98]

The doctrine of *res ipsa loquitur* is a rule of circumstantial evidence that "allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's

---

[96] *Yokum*, 977 So. 2d at 874 (the 1996 amendments to article 667 "shift[ed] the absolute liability standard to a negligence standard").
[97] La. Civ. Code art. 667.
[98] R. Doc. 1-1 at ¶ 43.

negligence, more probably than not, caused the injury."[99] The doctrine applies "in cases where the plaintiff uses circumstantial evidence alone to prove negligence by the defendant."[100] The doctrine of *res ipsa loquitur* is to be used sparingly.[101]

Defendants argue to the extent the Plaintiffs assert a "claim" under the doctrine of *res ipsa loquitur*, this claim should be dismissed because the doctrine is only a rule of circumstantial evidence.[102] The Court agrees. If the Plaintiffs pleaded a separate cause of action under *res ipsa loquitur* such a claim would be dismissed, but the Court sees no evidence of such a claim.

However, to the extent the Plaintiffs intend to use the doctrine of *res ipsa loquitur* to support their negligence claims, a ruling at this stage is improper. The applicability of the doctrine of *res ipsa loquitur* "is determined at the conclusion of trial—or at least following the completion of discovery."[103] Accordingly, Defendants' challenge to Plaintiffs' potential reliance upon the doctrine of *res ipsa loquitur* to support their negligence and/or strict liability claims is premature at this stage of the proceedings.

**IT IS ORDERED** that Defendants' motions to dismiss for failure to state a claim[104] based on the doctrine of *res ipsa loquitur* are **DENIED**.

---

[99] *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992) (citing *Cangelosi v. Our Lady of the Lake Regional Med. Ctr.*, 564 So. 2d 654, 660 (La. 1989).

[100] *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So. 2d 36, 41 (La. 2007). The doctrine "merely assists the plaintiff in presenting a prima facia case of negligence when direct evidence is not available." *Id.* (quoting *Cangelosi*, 564 So. 2d at 665).

[101] *Spott*, 601 So. 2d at 1362.

[102] *See* R. Doc. 110 at 3–4.

[103] *Lucarelli ex rel. Taylor Estate v. D V A Renal Healthcare Inc*., No. 08-0406, 2008 WL 5586615, at *6 (W.D. La. Oct. 24, 2008), *report and recommendation adopted sub nom. Lucarelli ex rel. Taylor v. DVA Renal Healthcare Inc*., No. 08-0406, 2009 WL 276526 (W.D. La. Feb. 2, 2009) (citing *King v. King*, 235 La. 270, 277 (La. 1968)).

[104] R. Doc. 63 (Conoco); R. Doc. 113 (Marathon); R. Doc. 114 (BP); R. Doc. 116 (Texaco); R. Doc. 117 (Chevron); R. Doc. 67 (Shell); R. Doc. 69 (Grefer Defendants); R. Doc. 128 (L.B. Foster); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).

VI.   **Medical Monitoring**

All Defendants[105] seek to dismiss Plaintiffs' claims against them for medical monitoring. Plaintiffs' petition alleges "they are entitled to receive future medical expenses in the form of medical monitoring and screening."[106]

The Louisiana Supreme Court held in *Bourgeois v. A.P. Green Industries, Inc.* ("*Bourgeois I*") that medical monitoring costs are compensable damages under Louisiana Civil Code article 2315 if the plaintiff satisfies seven criteria.[107] The seven criteria are:

1) A significant exposure to a proven hazardous substance;

2) As a proximate result of this exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease;

3) Plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease;

4) A monitoring procedure exists that makes the early detection of the disease possible;

5) The monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles;

6) The prescribed monitoring regime is different from that normally recommended in the absence of exposure; and

7) There is some demonstrated clinical value in the early detection and diagnosis of the disease.[108]

In response, the Louisiana Legislature amended Louisiana Civil Code article 2315 to exclude future medical monitoring from the statute's definition of compensable damages.[109] Revised article 2315(B) provides in relevant part "Damages do not include

---

[105] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, the Grefer Defendants, OFS, Alpha Tech, Riverstone, and Lloyd's.
[106] R. Doc. 1-1 at ¶ 45.
[107] 716 So. 2d 355, 360 (La. 1998).
[108] *Id.*
[109] Acts 1999, No. 989.

costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease."[110] "[T]he amendment effectively eliminated medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease."[111] The amendment became effective on July 9, 1999.

Subsequently, the Louisiana Supreme Court, in *Bourgeois II*, held Act 989 does not apply retroactively, and "plaintiffs have a vested right to assert their causes of action for medical monitoring if those rights accrued prior to July 9, 1999."[112]

Therefore "to state a claim for medical monitoring damages following the amendment to article 2315 and the Louisiana Supreme Court's decision in *Bourgeois II*, a plaintiff must either (1) satisfy Louisiana Civil Code article 2315(B) which requires that the monitoring relate to a manifest physical or mental injury or disease; or (2) demonstrate that the seven factors forming the *Bourgeois I* test converged before July 9, 1999."[113]

Which test applies depends on when the Plaintiffs' causes of action accrued. *Bourgeois II* defines a cause of action, for purposes of the peremptory exception, as "the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant."[114] "The existence of the seven factors enunciated in *Bourgeois I* are the operative facts which give rise to the plaintiff[s] right to judicially assert the action against

---

[110] La. Civ. Code art. 2315(B).

[111] *Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1230 n.6 (La. 2003).

[112] *Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1260 (La. 2001).

[113] *Hill v. Exxon Mobil Corp.*, No. 11-2786, 2012 WL 359322, at *2 (E.D. La. Feb. 2, 2012); *see also Crooks v. Metro. Life Ins. Co.*, 785 So. 2d 810, 812 (La. 2001) ("[F]or the *Bourgeois II* holding to apply, the seven factors forming the *Bourgeois I* cause of action for medical monitoring must have converged prior to July 9, 1999.").

[114] *Hill*, 2012 WL 359322, at *2 (quoting *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So. 2d 1234, 1238 (La. 1993)).

the defendant."[115] Plaintiffs' rights of action "accrue[], and they [have] a right to sue for medical monitoring damages, upon the convergence of the seven [*Bourgeois I*] factors."[116]

Plaintiffs' petition does not allege whether each plaintiff's cause of action for medical monitoring damages accrued before or after Act 989's effective date. Defendants argue Plaintiffs' petition fails to state a claim for medical monitoring damages under both the current article 2315(B) test and the *Bourgeois I* test.[117]

To the extent some plaintiffs' causes of action became manifest after July 9, 1999, the petition does not allege which plaintiffs have a "manifest physical injury or mental injury or disease" as required by article 2315(B). "The fact that [Plaintiffs] may have been exposed to radiation is not, in and of itself, sufficient."[118]

To the extent some plaintiffs' causes of action became manifest before July 9, 1999 and are therefore subject to the *Bourgeois I* test, the petition does not sufficiently allege the seven *Bourgeois I* criteria for each plaintiff. Plaintiffs' general allegations reference some of the *Bourgeois I* factors, but the petition fails to allege facts sufficient to state a claim based on the required criteria for each plaintiff.[119] For example, the petition does not allege with respect to each plaintiff: whether the plaintiff suffered a significantly increased risk of contracting a serious latent disease, whether such risk is greater than the risk of contracting the same disease absent exposure, whether such risk of contracting a latent disease is greater than the chances the members of the public of developing the disease, what type of monitoring regimen is sought, or which qualified physicians prescribed such monitoring. A petition that "offers labels and conclusions or formulaic

---

[115] *Id.* (internal quotations omitted).
[116] *Id.*
[117] *See* R. Doc. 63-1 at 14; R Doc. 118-1 at 7–8.
[118] *Royal v. Exxon Mobil Corp.*, No. 12-00081, 2012 WL 280305, at * 1 (E.D. La. Feb. 6, 2012).
[119] *See id.*

recitation of the elements of a cause of action will not do. Nor does a [petition] suffice if it tenders naked assertions devoid of further factual enhancement."[120]

**IT IS ORDERED** that Plaintiffs have until **March 13, 2017** to amend their complaint to properly allege a cause of action for medical monitoring damages. Plaintiffs must clearly allege when each plaintiff's cause of action for medical monitoring accrued, before or after July 9, 1999. If a plaintiff's cause of action accrued before July 9, 1999, that plaintiff must allege facts to address each of the *Bourgeois I* factors. If a plaintiff's cause of action accrued after July 9, 1999, that plaintiff must allege facts to support the "treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease" as required by article 2315(B).[121]

VII.   **Punitive Damages**

Plaintiffs bring punitive damage claims against the all Defendants under former article 2315.3 of the Louisiana Civil Code. The Oil Company Defendants,[122] Grefer Defendants, and the Pipe Contractor Defendants[123] assert the Plaintiffs are barred from seeking punitive damages under former Civil Code article 2315.3 because the Defendants' actions did not occur within the article's effective period.

Plaintiffs allege the actions of all Defendants occurred between 1958 and 1992.[124] Plaintiffs allege "they are entitled to recover exemplary damages from the Defendants . . .

---

[120] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[121] Any now-deceased plaintiff cannot sustain a claim for medical monitoring damages. The Louisiana Supreme Court has recognized "the personal nature of the medical monitoring cause of action" and held that the cause of action abates "as a matter of law" "[u]pon the death of the original plaintiff." *Meral v. Aucoin*, 772 So. 2d 107, 107 (La. 2000) (per curiam) (citing LA. CIV. CODE art. 428).
[122] Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, and L.B. Foster.
[123] OFS, Alpha Tech, Riverstone, and Lloyd's.
[124] R. Doc. 1-1 at ¶ 8. Plaintiffs' petition is conflicting in that paragraph 8 states "[t]he pipe cleaning business operated on the Property continuously from 1958 through 1992," but paragraph 50 provides "the activity of cleaning contaminated pipe on the Property began in 1968 and ended in 1987." The Plaintiffs must amend their complaint to cure this deficiency.

because of the Defendants' reckless and wanton disregard for public safety in the storage, handling, transporting, and/or disposal of hazardous and/or toxic materials . . . during the period of the effective dates of Civil Code article 2315.3."[125] Plaintiffs also allege the "acts and/or omissions of the [Defendants] are a substantial, contributing cause of Petitioners' injuries and damages."[126]

Former article 2315.3 provides "[i]n addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."[127] To obtain an award for punitive damages, a plaintiff must satisfy four elements:

1) The defendant's conduct must be wanton or reckless;

2) The defendant's wanton or reckless conduct must create a danger to the public;

3) The defendant's wanton or reckless conduct must occur in the storage, handling, or transportation of hazardous or toxic substances; and

4) The plaintiff's injuries must be caused by the defendant's wanton or reckless conduct consisting of all of these elements.[128]

Further, to state a claim for punitive damages, the Plaintiffs must plead facts to establish that the actions occurred during the effective period of article 2315.3. The provision was in effect between September 4, 1984 and April 16, 1996, and applies to causes of action based on actions occurring during that time period.[129] Thus, "in order to

---

[125] *Id.* at ¶ 48.

[126] *Id.* at ¶ 32.

[127] *See Corbello v. La. Prod.*, 850 So. 2d 686, 707 (La. 2003).

[128] *In re Harvey Term Litig.*, 872 So. 2d 584, 586 (La. Ct. App. 4 Cir. 4/21/04) (citing *Billiot v. B.P. Oil Co.*, 645 So. 2d 604, 617–18 (La. 1994), *reversed on other grounds*, *Adams v. J.E. Merit Cons. Inc.*, 712 So. 2d 88 (La. 1998)).

[129] *See Corbello*, 850 So. 2d at 707 n.9; *Brownell Land. Co. v. Apache Corp.*, No. 05-322, 2005 WL 3543772, at *6 (E.D. La. Oct. 13, 2005).

state a cause of action for exemplary damages, the plaintiff must plead facts which establish the[] cause of action [arose] during the effective period of article 2315.3."[130]

The Court finds the Plaintiffs allege plausible claims for punitive damages against the Oil Company Defendants and the Pipe Contractor Defendants for causes of action during the effective period of article 2315.3.

Plaintiffs, however, do not state a plausible claim for punitive damages against the landowners, the Grefer Defendants. The Louisiana Fourth Circuit Court of Appeal has considered whether the Grefer Defendants, as landowners, may be liable for punitive damages for damage due to pipe-cleaning operations on their property. In *In re Harvey Term Litigation*, the court found "the facts as alleged by the plaintiffs indicate a tangential connection between the Grefers and the toxic NORM in question," but this was insufficient to state a claim against the landowners for punitive damages.[131] "[M]ere ownership alone is insufficient without demonstrating that the party had any dealings with the substance itself."[132] "[A] defendant must be "engaged in" the storage, handling, or transportation of hazardous substances."[133] In this case, Plaintiffs do not allege the Grefer Defendants engaged in the storage, handling, or transportation of the allegedly contaminated pipes. Accordingly, Plaintiffs fail to state a plausible claim for punitive damages against the Grefer Defendants.

---

[130] *In re Harvey Term Litig.*, 872 So. 2d at 586.
[131] *In re Harvey Term Litig.*, 872 So. 2d 1214, 1218 (La. Ct. App. 4 Cir. 4/7/04), *writ denied*, 876 So. 2d 846 (La. 2004).
[132] *Id.*
[133] *Id.*

**IT IS ORDERED** that the Oil Company Defendants' and the Pipe Contractor Defendants' motions to dismiss for failure to state a claim[134] with respect to Plaintiffs' punitive damage claims are **DENIED**.

**IT IS FURTHER ORDERED** that the Grefer Defendant's motion to dismiss for failure to state a claim[135] with respect to Plaintiffs' punitive damages claims is **GRANTED**.[136]

## VIII.   <u>Pre-Incorporation Liability</u>

The Shell Defendants—Shell Offshore, Inc., and SWEPI LP—seek to dismiss Plaintiffs' claims against them to the extent they are based on liability for acts that occurred before the entities were incorporated. Presumably, the Shell Defendants are referring to Plaintiffs' causes of action under Louisiana Civil Code articles 2315, 2317, 2317.1, 2315.3, and 667 against the Oil Company Defendants. The Shell Defendants argue Plaintiffs fail to state a claim against Shell Offshore, Inc. and SWEPI LP to the extent Plaintiffs claim they were exposed or their properties were contaminated during a time period before the entities were formed.[137]

---

[134] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko), R. Doc. 128 (L.B. Foster), R. Doc. 141 (OFS), R. Doc. 145 (Alpha Tech), R. Doc. 158 (Riverstone), R. Doc. 159 (Lloyd's).

[135] R. Doc. 69 (Grefer Defendants).

[136] The Court will not allow Plaintiffs to amend their complaint with respect to their claim for punitive damages against the Grefer Defendants, as any amendment would be futile. Rule 15(a)(2) states that a court "should freely give leave [to amend] when justice so requires." The Court, however, has the discretion to grant or deny a motion to amend and may consider a variety of factors including "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 268 (5th Cir. 2004). In determining whether granting a motion to amend would be futile, the Fifth Circuit has stated: "While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

[137] R. Doc. 67-1 at 5. Defendants cite to Louisiana Revised Statutes sections 12:25 and 12:41 in support of their proposition. R. Doc. 67-1 at 5. These statutes have been repealed. Effective January 1, 2015, the Louisiana Legislature enacted the Louisiana Business Corporation Act, repealing the Louisiana Business Corporation Law.

Plaintiffs have not alleged that the Shell Defendants are liable for acts occurring before their dates of incorporation.

**IT IS ORDERED** that the Plaintiffs amend their complaint by **March 13, 2017** to allege facts with respect to the Shell Defendants' liability before their dates of incorporation.

## IX.   Unjust Enrichment

The Grefer Defendants seek to dismiss Plaintiffs claims against them for unjust enrichment.[138] Plaintiffs allege the Grefer Defendants obtained a compensatory damages verdict in their favor against the defendants named in this suit for some of the same radioactive contamination complained of in this matter.[139] Plaintiffs further allege the Grefer Defendants "have an obligation to clean up their property, and this obligation runs in favor of the Petitioners. To the extent the Grefers have collected or may collect any part of those damages by settlement or judgment, and do not use all of the proceeds to clean up their property, then they will have been enriched without cause at the expense of the Petitioners, and the Petitioners are entitled to share in those damages."[140]

Louisiana Civil Code article 2298—Louisiana's unjust enrichment article—provides as follows:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.[141]

---

[138] R. Doc. 69-1 at 4.
[139] R. Doc. 1-1 at ¶ 47.
[140] *Id.*
[141] LA. CIV. CODE art. 2298.

Louisiana courts have interpreted article 2298 to require the following elements to establish an unjust enrichment claim: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of "justification" or "cause" for the enrichment or impoverishment; and (5) the absence of any remedy at law.[142]

One of the required elements for a successful unjust enrichment claim is that "'there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.'"[143] The Louisiana Supreme Court has stated that "[t]he unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided,'"[144] and "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[145]

The Plaintiffs have pleaded causes of action against the Grefer Defendants under Louisiana Civil Code article 667, article 2315, and others.[146] "[I]f a plaintiff pleads a legal cause of action in his complaint, he may not also assert a claim for unjust enrichment, because the latter is precluded by the availability of the former."[147] "[I]t is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied."[148] The Plaintiffs' contention that "whether there are other remedies at law for Plaintiffs is unable to be determined"[149] is

---

[142] *Baker v. Maclay Properties Co.*, 648 So. 2d 888, 897 (La. 1995) (citing *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 432 (La. 1967)).

[143] *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (quoting *Minyard*, 205 So. 2d at 432).

[144] *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010) (per curiam) (quoting *Mouton v. State*, 525 So. 2d 1136, 1142 (La. App. 1 Cir. 1988)).

[145] *Id.*; *see also JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521–22 (E.D. La. 2013).

[146] R. Doc. 1-1 at ¶¶ 25–28.

[147] *Alford*, 2014 WL 1612454, at *24 (citing *Port of S. La. V. TriParish Indus., Inc.*, 927 F. Supp. 2d 332, 341 (E.D. La. 2013).

[148] *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 3 Cir. 4/2/08).

[149] R. Doc. 107 at 5.

simply incorrect. Having pled a delictual action, the Plaintiffs are precluded from seeking to recover under unjust enrichment.[150]

Accordingly, Plaintiffs' claim against the Grefer Defendants for recovery under the theory of unjust enrichment cannot stand under Louisiana law.

**IT IS ORDERED** that the Grefer Defendants' motion to dismiss for failure to state a claim[151] with respect to Plaintiffs' claim for unjust enrichment is **GRANTED**.[152]

## X.   Property Damage or Diminution in Value

Anadarko, Riverstone, and Lloyd's seek dismissal of Plaintiffs' claims against them for property damage or diminution of property value.[153] Plaintiffs allege they "live in or formerly lived in, and/or work or formerly worked in, and/or own or formally [sic] owned real property in Harvey, Parish of Jefferson, State of Louisiana, in and around that area of Harvey that is bounded by Peters Road, Sixteenth Street, Pailet Avenue, and Breaux Avenue."[154] Plaintiffs allege "they are entitled to receive . . . compensation for . . . damage to their property and the diminution in the value of their property"[155] and the actions of the Defendants "caused the Petitioners to have their . . . real property exposed to the [hazardous materials]."[156]

Anadarko, Riverstone, and Lloyd's argue Plaintiffs' claims against them should be dismissed because "a claim for damages to property belongs to the person who owns the property at the time it was damaged" and the landowner at the time of the alleged damage

---

[150] *Walters*, 30 So. 3d at 242.
[151] R. Doc. 69.
[152] The Court will not allow Plaintiffs to amend their complaint with respect to their claim for unjust enrichment against the Grefer Defendants. *See supra*, note 136.
[153] R. Docs. 118, 158.
[154] R. Doc. 1-1 at ¶ 5(A).
[155] *Id.* at ¶ 38; *see also id.* at ¶ 44.
[156] *Id.* at ¶ 39.

has the real and actual interest to assert a claim."[157] Anadarko, Riverstone, and Lloyd's point the Court to the Louisiana Supreme Court's ruling in *Eagle Pipe*, in which the supreme court held "[i]n the absence of an assignment or subrogation of this personal right [to sue the tortfeasor for damages], a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale."[158]

The Plaintiffs allege some of them own or owned property "in and around" the area where the pipe-cleaning operations were conducted.[159] Specifically, the Plaintiffs allege the residue from the pipe-cleaning operations "became airborne and either drifted off the Property, or was wind-blown off the Property into the Petitioners' neighborhood and onto their properties."[160] The Plaintiffs have not alleged which individual plaintiffs owned property "in and around" the area the pipe-cleaning operations were conducted at the time of the allegedly tortious conduct.

**IT IS ORDERED** that Plaintiffs amend their complaint by **March 13, 2017** to allege which individual plaintiffs owned property near the pipe-cleaning operations at the time of the allegedly tortious conduct, where the property is located, the nature of the damage, and when the damage occurred.

## CONCLUSION

The Court will allow Plaintiffs to amend their complaint to cure deficiencies in numerous areas. The Plaintiffs are cautioned that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

---

[157] R. Doc. 118-1 at 22.
[158] *Eagle Pipe*, 79 So. 3d at 279.
[159] R. Doc. 1-1 at ¶ 5.
[160] *Id*. at ¶ 15.

dismiss."[161] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[162] A petition does not suffice "if it tenders naked assertions devoid of further factual enhancement."[163] If Plaintiffs fail to sufficiently allege facts to plausibly state causes of action for each individual plaintiff, the Court will grant Defendants' motions to dismiss with respect to those plaintiffs for whom the allegations are deficient. Finally, no further amendments to the Plaintiffs' complaint will be permitted.

**IT IS ORDERED** that the Plaintiffs amend their complaint by **March 13, 2017** to include allegations for each plaintiff in accordance with the following instructions:

1) Plaintiffs must state a time period during which they allege the pipe-cleaning operations were conducted. This will cure the discrepancy between paragraphs 8 and 50 in the current petition.[164]

2) With respect to their claims against the Oil Company Defendants and Pipe Contractor Defendants for strict liability under articles 2317 and 2317.1 for claims arising after 1996, Plaintiffs must allege whether the damage caused by the pipe cleaning operations could have been prevented by the Oil Company Defendants' exercise of reasonable care. As to the Pipe Contractor Defendants, Plaintiffs must allege whether each Pipe Contractor Defendant knew or should have known of the vice or defect, whether the damage could have been prevented by the exercise of that Pipe Contractor Defendant's reasonable care, and whether that Pipe Contractor Defendant failed to exercise such reasonable care.

3) With respect to their claims against the Pipe Contractor Defendants for absolute liability under article 667 for conduct that occurred before 1996, Plaintiffs must amend their complaint to make allegations with respect to whether the pipe-cleaning operations require substandard conduct to cause injury.

---

[161] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[162] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[163] *Id.*
[164] Plaintiffs' petition is conflicting in that paragraph 8 states "[t]he pipe cleaning business operated on the Property continuously from 1958 through 1992," but paragraph 50 provides "the activity of cleaning contaminated pipe on the Property began in 1968 and ended in 1987."

4) With respect to their claims for medical monitoring damages, Plaintiffs must amend their complaint to allege which individual plaintiffs have a manifest physical or mental injury or disease, and when it became manifest. If a plaintiff's physical or mental injury or disease accrued before July 9, 1999, that plaintiff must allege the factors set forth in *Bourgeois I*.

5) With respect to their claims against the Shell Defendants, Plaintiffs must amend their complaint to allege the basis for liability of Shell Offshore, Inc. or SWEPI, LP for any damages before their respective dates of incorporation.

6) With respect to their property damage claims, Plaintiffs must amend their complaint to allege which individual plaintiffs owned property near the pipe-cleaning operations at the time of the allegedly tortious conduct, where the property is located, the nature of the damage, and when the damage occurred.

To the extent the amended complaint satisfies the deficiencies set forth above, the motions to dismiss will be denied without prejudice to the defendants refiling their motions with respect to those claims. To the extent the amended complaint does not satisfy the deficiencies set forth above, the motions to dismiss will be granted.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss[165] for failure to state a claim with respect to depositor/depositary liability are **GRANTED** and Plaintiffs' claims for depositor/depositary liability against Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, OFS, Alpha Tech, Riverstone, and Lloyd's are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss for failure to state a claim[166] with respect to Plaintiffs' claims based on the continuing tort doctrine are **DENIED**.

---

[165] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).

[166] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 69 (Grefer Defendants); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).

**IT IS FURTHER ORDERED** that Oil Company Defendants' and Pipe Contractor Defendants' motions to dismiss for failure to state a claim[167] with respect to Plaintiffs' claims for strict liability under Louisiana Civil Code article 2317 for claims arising before 1996 are **DENIED**.

**IT IS FURTHER ORDERED** that the Oil Company Defendants'[168] motions to dismiss for failure to state a claim with respect to Plaintiffs' claims for liability under Louisiana Civil Code article 667 for conduct occurring before 1996 are **GRANTED**. Plaintiffs' claims against Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, and L.B. Foster for liability under article 667 for pre-1996 conduct are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Grefer Defendants' motion to dismiss for failure to state a claim[169] with respect to Plaintiffs' claims for liability under Louisiana Civil Code article 667 for conduct occurring before 1996 is **GRANTED**. Plaintiffs' claims against the Grefer Defendants for liability under article 667 for pre-1996 conduct are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motions to dismiss for failure to state a claim[170] filed by the Oil Company Defendants, Grefer Defendants, and the Pipe Contractor Defendants with respect to Plaintiffs claims for absolute liability—liability without proof of fault—under Louisiana Civil Code article 667 for conduct occurring after 1996 are

---

[167] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).
[168] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster).
[169] R. Doc. 69.
[170] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 69 (Grefer Defendants); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).

**GRANTED**. Plaintiffs' claims for absolute liability under article 667 for conduct occurring after 1996 against Conoco, Marathon, BP, Texaco, Chevron, Shell, Anadarko, L.B. Foster, OFS, Alpha Tech, Riverstone, and Lloyd's are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that motions to dismiss for failure to state a claim filed by the Oil Company Defendants, Pipe Contractor Defendants, and Grefer Defendants with respect to liability other than absolute liability under article 667 for damages as a result of conduct occurring after 1996 are **DENIED**.

**IT IS FURTHER ORDERED** that motions to dismiss for failure to state a claim[171] filed by the Oil Company Defendants, Grefer Defendants, and the Pipe Contractor Defendants with respect to the doctrine of *res ipsa loquitur* are **DENIED**.

**IT IS FURTHER ORDERED** that motions to dismiss[172] filed by the Oil Company Defendants and the Pipe Contractor Defendants for failure to state a claim with respect to punitive damages are **DENIED**.

**IT IS FURTHER ORDERED** that motion to dismiss[173] filed by the Grefer Defendants for failure to state a claim with respect to punitive damages is **GRANTED**. Plaintiffs' claim for punitive damages against the Grefer Defendants is **DISMISSED WITH PREJUDICE**.

---

[171] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 69 (Grefer Defendants); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).
[172] R. Doc. 63 (Conoco), R. Doc. 113 (Marathon), R. Doc. 114 (BP), R. Doc. 116 (Texaco), R. Doc. 117 (Chevron), R. Doc. 67 (Shell), R. Doc. 118 (Anadarko); R. Doc. 128 (L.B. Foster); R. Doc. 141 (OFS); R. Doc. 145 (Alpha Tech); R. Doc. 158 (Riverstone); R. Doc. 159 (Lloyd's).
[173] R. Doc. 69.

**IT IS FURTHER ORDERED** that the Grefer Defendants' motion to dismiss for failure to state a claim[174] with respect to Plaintiffs' claim for unjust enrichment is **GRANTED**. Plaintiffs' claim for unjust enrichment against the Grefer Defendants is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 21st day of February, 2017.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[174] R. Doc. 69.